**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| ANGELA MUSTO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket no. 1:20-cv-00188-GZS |
| | ) |
| LIBERTY INSURANCE | ) |
| CORPORATION, D/B/A LIBERTY | ) |
| MUTUAL, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS**

Before the Court is the Motion for Judgment on the Pleadings (ECF No. 10) by Defendant Liberty Mutual Corporation, d/b/a Liberty Mutual ("Liberty"). As explained herein, the Motion is DENIED.

## I.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion; the "modest difference" is that, unlike a Rule 12(b)(6) motion, a Rule 12(c) motion "implicates the pleadings as a whole." Aponte-Torres v. University of P.R., 445 F.3d 50, 54–55 (1st Cir. 2006). Accordingly, to survive a Rule 12(c) motion, as under Rule 12(b)(6), the plaintiff must have alleged sufficient factual matter in the pleadings "to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Rios-Campbell v. U.S. Dep't of Commerce, 927 F.3d 21, 24 (1st Cir. 2019) ("If a motion for judgment on the pleadings . . . is employed as a vehicle

to test the plausibility of a complaint, the Rule 12(b)(6) plausibility standard may again come front and center." (internal quotation marks omitted)).  Under Rule 7(a), allowed "pleadings" include the complaint, the answer to the complaint, and any answer filed to a counterclaim.

"Because [a Rule 12(c)] motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom."  Collins v. Maine State Prison Warden, No. 1:18-cv-00435-NT, 2019 U.S. Dist. LEXIS 53748, at *3 (D. Me. Mar. 29, 2019) (quoting Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)) (alteration in original).  "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment."  ACA Connects – America's Communications Ass'n v. Frey, --- F. Supp. 3d ---, No. 1:20-cv-00055-LEW, 2020 U.S. Dist. LEXIS 118293, at *5 (D. Me. July 7, 2020) (quoting Aponte-Torres, 445 F.3d at 54); see also R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006) ("There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point.").

"In reviewing a motion under Rule 12(c), [the Court] . . . may consider documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiff['s] claim; [and] documents sufficiently referred to in the complaint.  This is true even when the documents are incorporated into the movant's pleadings."  Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007); see also R.G. Fin., 446 F.3d at 182 ("The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice.").  However, the attachment of a document to the movant's pleading, without more, does not

automatically permit its review—it must still satisfy the above requirements to be considered at this stage.[1]

## II.    FACTUAL & PROCEDURAL BACKGROUND

Angela Musto is the owner of a property (the "Property") in Litchfield, Maine.  (See Compl. (ECF No. 1-1), PageID # 4.)  For the period September 2018 to September 2019, Liberty had issued a homeowner's insurance policy, policy number H3721815048370 (the "Policy"), for the Property with Musto as the named insured.  (See Policy (ECF No. 5-1), PageID # 37.)

### A.  The Policy

Three areas of coverage under the Policy are relevant to the present action: (1) Coverage A ("Dwelling with Expanded Replacement Cost"); (2) Coverage C ("Personal Property with Replacement Cost"); and (3) Coverage D ("Loss of Use of Insured Location").   (Policy, PageID #s 46–51.)

For settling disagreements over the amount of loss under any of these various coverages, the Policy contains the following appraisal provision:

> 6.  Appraisal. If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.  In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located.  The appraisers will separately set the amount of loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of loss.  Each party will:
> a. Pay its own appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.

---

[1] Although a "a written instrument that is an exhibit to a pleading is a part of the pleading *for all purposes*," Fed. R. Civ. P. 10(c) (emphasis added), the "'incorporation by reference' doctrine" still applies because "the conversion provision applicable to Rule 12(b)(6) motions is identical to the one applicable to Rule 12(c) motions, and they serve the identical purpose of preventing the circumvention of the Rule 56 notice and opportunity to be heard provisions when extraneous materials are considered," Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

(Id., PageID # 55.)

### B.  The Claim

On February 20, 2019—i.e., during the coverage period—Musto experienced a pellet stove malfunction that caused smoke damage to the Property and its contents.  (Compl., PageID # 5.) After this incident, Musto submitted a claim to Liberty for reimbursement of costs to cover the rehabilitation of the Property and its contents.  (Id., PageID # 6.)   She also made alternative housing arrangements until the Property could be rehabilitated and expected her claim would include reimbursement for these expenses as well.  (Id.)

Liberty received notice of Musto's claim within days of the incident.  (Def. Answer (ECF No. 5), PageID # 30; Pl. Answer to Counterclaim (ECF No. 7), PageID # 111.)  Liberty proceeded to investigate Musto's loss and acknowledged at least some coverage for the loss. (Compl., PageID # 6.)  On March 4, 2019, Liberty sent Musto a reservation of rights letter, reserving its right to deny a portion of the claim if it determined that the alleged loss was excluded under the Policy. (See Ex. 2 to Def. Answer (ECF No. 5-2), PageID # 86; Pl. Answer to Counterclaim, PageID # 112.)  Nonetheless, Liberty made multiple payments to Plaintiff associated with this loss.  (See Def. Answer, PageID #s 30–31; Pl. Answer to Counterclaim, PageID #s 112–13.)

Not satisfied that Liberty was adequately reimbursing her for the losses associated with her claim, Musto eventually hired John Harvey to serve as her public adjuster to assist her in preparing an estimate of the cost to repair the Property and dealing with Liberty.  (See Pl. Answer to Counterclaim (ECF No. 7), PageID # 112.)

## C. The Appraisal[2]

Given that Musto and Liberty could not reach an agreement on the full amount of her loss, the appraisal process outlined in the Policy commenced.  At some point, Musto objected to the appraisal process, claiming Liberty failed to comply with the provisions of the policy and applicable Maine law.  (Compl., Page ID # 8; Pl. Answer to Counterclaim, PageID # 114.)

Despite Musto's objection, it appears that the appraisal process moved forward with Liberty's appraiser and the umpire ultimately setting Musto's loss amount at $20,500 under Coverage A and $8,700 under Coverage B.  (See Ex. 4 to Def. Answer (ECF No. 5-4), PageID # 93.)  After  accounting for depreciation and the deductible, this appraisal found that Musto's claim totaled $22,950.00.  (Id.)  By contrast, Musto submitted three notarized proofs of loss claiming damages in excess of $59,645.68, plus additional living expenses and cleaning costs.[3]  (See Ex. 5 to Def. Answer (ECF No. 5-5), PageID #s 96, 99–100.)

## D. Complaint and Counterclaim

In May 2020, Musto filed a three-count complaint against Liberty in Maine Superior Court. In her complaint, she asserted a breach of contract claim; a claim under Maine's Unfair Claims Settlement Practices Act, 24-A M.R.S.A. § 2436-A, which included a demand for statutory attorney's fees; and a common law claim for attorney's fees.  (Compl., PageID #s 5–9.)

---

[2] It appears many of the facts surrounding the appraisal process are disputed.  Plaintiff's Complaint makes only passing references to the appraisal process.  See Compl., PageID # 8.  Defendant's Answer & Counterclaim (ECF No. 5) and the various attached exhibits provide more detailed factual allegations regarding the appraisal process. In turn, Plaintiff's Answer to the Counterclaim (ECF No. 7) provides additional allegations regarding improprieties in the appraisal process and denies many of Defendant's allegations.  In this section, the Court construes the appraisal allegations in the light most favorable to Plaintiff and avoids areas of apparent genuine dispute.

[3] In her proof of loss, Musto acknowledged having received payments from Liberty totaling $10,429.77 as of February 19, 2020, as well as her policy deductible of $2,500.00.  See Ex. 5 to Def. Answer (ECF No. 5-5), PageID # 96.

Liberty removed the action to this Court, claiming diversity jurisdiction and asserting that more than $75,000 was in controversy.[4]  (Notice of Removal (ECF No. 1), PageID # 1.)  In its Answer, Liberty asserted a suite of affirmative defenses and raised a counterclaim.  Specifically, Liberty sought a declaratory judgment that (1) the appraisal award is binding under the terms of the Policy; (2) Liberty fulfilled its duties under the Policy; and (3) Liberty is not required to make any further payments due to the allegedly binding appraisal.  (Def. Answer, PageID # 35.)  Liberty also attached six exhibits to its Answer: (1) the Policy (ECF No. 5-1); (2) a reservation of rights letter dated March 4, 2019 (ECF No. 5-2); (3) a reservation of rights letter dated November 8, 2019 (ECF No. 5-3); (4) an appraisal award (ECF No. 5-4); (5) three proof of loss forms dated between February 19, 2020 and March 2, 2020, each containing Musto's notarized signature (ECF No. 5-5); and (6) a letter from Liberty's counsel, dated March 11, 2020, that rejects Musto's three proofs of loss.

In her Answer to the Counterclaim, as relevant here, Musto denied nearly all of Liberty's allegations concerning the appraisal process—except that she had objected to it—and the events that followed.  (Pls. Answer, PageID #s 114–16.)  She asserted, as an affirmative defense, that the appraisal process had been invalid due to its noncompliance with the policy and Liberty's appraiser's lack of independence.  (Pls. Answer, PageID # 117.)  She further alleged that she had withdrawn from the appraisal process.  (Id., PageID #s 117–18.)

---

[4] The Court notes that it convened a conference of counsel on September 30, 2020, to initially inquire about the sufficiency of the amount in controversy.  Based on the representations made on the record by counsel for both sides, the Court is satisfied that the amount in controversy meets or exceeds the amount necessary for diversity jurisdiction.  See Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 87 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.")

### III.    DISCUSSION

Defendant's Motion for Judgment on the Pleadings, which attaches two of the exhibits previously attached to its Answer, explicitly seeks judgment on all three counts of Plaintiff's Complaint.[5]  As to Count I, Defendant argues that there was no breach of contract because Plaintiff demanded appraisal and Defendant paid the amount set by the appraisal process.  As to Count II, Defendant asserts that Plaintiff's factual allegations are insufficient to support a claim under Maine's Unfair Claims Settlement Practices Act ("UCSPA"), 24-A M.R.S.A. § 2436-A.  As to Count III, Defendant maintains that Plaintiff's common law claim for attorney's fees fails because both of her other claims lack merit, and, in any event, it is based on a misunderstanding of Maine precedent.  The Court addresses each of these arguments in turn.

### A.  Count I:  Breach of Contract

In short, the Court fails to see how this claim can be resolved on the dueling pleadings.  At present, the narrative generated by the cumulative pleadings is neither uncontested nor completely clear.  Importantly, for instance, Plaintiff's Answer to the Counterclaim (ECF No. 7) denies nearly all facts alleged by Defendant concerning the appraisal process and the legitimacy of the award.  There are also documents that have been submitted—e.g., Plaintiff's submission of correspondence in her response to the present motion (ECF No. 13-1)—that may not be incorporable into the pleadings.  At summary judgment, Plaintiff would potentially need to buttress her position with more than mere denials and attached correspondence.  See, e.g., Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) ("[A]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving

---

[5] As relevant here, it is not clear whether Liberty is seeking judgment on its counterclaim, as all of its arguments are framed responsively to Musto's claims.

party.") (quoting <u>In re Spigel</u>, 260 F.3d 27, 31 (1st Cir. 2001)).  At present, however, the case

remains in an "embryonic state."  <u>Collins</u>, 2019 U.S. Dist. LEXIS 53748, at *3. Defendant is

certainly free to renew its arguments regarding its lack of breach given its payments and

participation in the appraisal process in a motion for summary judgment.  However, the pending

request for this claim to be resolved on the pleadings and various exhibits attached thereto is

denied.[6]

### B.  Count II:  UCSPA

The UCSPA enables an insured to recover damages, costs, attorney's fees, and interest if

it is established that an insurer engaged in one of the following five acts:

A. Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue;

B. Failing to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy;

C. Threatening to appeal from an arbitration award in favor of an insured for the sole purpose of compelling the insured to accept a settlement less than the arbitration award;

D. Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim; or

E. Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

24-A M.R.S.A. 2436-A.

Looking at Plaintiff's relatively sparse Complaint, the Court agrees that Plaintiff ideally

should have stated the grounds for her claim more plainly.  <u>See, e.g.</u>, <u>Grajales v. Puerto Rico Ports</u>

---

[6] The Court notes that at the September 30, 2020 telephonic conference, Plaintiff's counsel represented to the Court that discovery, including depositions, was ongoing and that he contemplated having additional evidence to submit to the Court if and when the Court examined this matter through the lens of summary judgment.  The Court has additionally weighed this representation in determining that it would be improper to consider a conversion of the pending Motion in accordance with Federal Rule of Civil Procedure 12(d).

Auth., 682 F.3d 40, 44 (1st Cir. 2012) ("It is a truism that a complaint need contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2))); cf. Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 651 (Me. 1993) ("[P]laintiffs failed to specifically point to which of the four subsections of section 2436-A they claim [Defendant] violated."). Taken as a whole, however, the Court views the pleadings to plausibly implicate, at least at this early stage, one or more of the above sections.[7] For instance, Plaintiff appears to assert that by allegedly withholding the full amount of owed damages until the present, Defendant has refused to provide a prompt, fair and equitable settlement, implicating § 2436-A(E).

Thus, the Court holds that Defendant is not entitled to judgment on the pleadings with respect to Count II.

### C.  Count III: Common Law Attorney's Fees

In her Complaint, Plaintiff asserts a common law right to attorney's fees "in accordance with *Foremost Insurance Company v. Levesque*, 20017 ME 96 ¶¶ 17, 18, 926 A.2d 1185." (Compl., Page ID # 9.) Defendant argues that Plaintiff's reliance on Foremost is misplaced because it "stands for the proposition that if a carrier brings an action against an insured with respect to its duties to defend and indemnify, and subsequently is unsuccessful, its insured may be entitled to attorney's fees." (Def. Mot. (ECF No. 10-1), PageID # 136.)

The Court generally agrees with Defendant that Foremost is distinguishable from this case both in terms of the procedural posture of the case and the nature of the insured's claim. Notably, this case is more analogous to Pinkham v. Liberty Ins. Corp., No. 1:0018-cv-222-DBH, 2018 U.S.

---

[7] To be clear, the sparse narrative of the Complaint has been supplemented by the various responsive pleadings and exhibits attached thereto. In the context of Rule 12(c), the Court considers these additional facts in the light most favorable to Plaintiff.

Dist. LEXIS 128923 (D. Me. Aug. 1, 2018).[8]  In <u>Pinkham</u>, the insurer moved to dismiss a common law claim for attorney's fees in a case involving a coverage claim brought by the insured.  Judge Hornby granted the motion to dismiss the attorney's fee claim.  In reaching this conclusion, he held that "<u>Foremost</u> thus does not provide [the plaintiff insured] a common law right to attorney's fees should he prevail on his coverage claim."  <u>Id.</u> at *4.  In response to the plaintiff's suggestion that <u>Foremost</u>'s reasoning could be extended to allow a common law attorney's fee claim in coverage cases brought by insured plaintiffs, Judge Hornby explained, "the Law Court has not yet said so, and '[f]ederal court is not the place to make new state law.'"  <u>Id.</u> (quoting <u>Town & Country Motors, Inc. v. Bill Dodge Auto. Grp., Inc.</u>, 115 F. Supp. 2d 31, 33 (D. Me. 2000)).  The Court agrees with the reasoning and holding of <u>Pinkham</u>.  As a result, it would have been inclined to similarly dismiss Count III if this argument had been raised via a similar Rule 12(b)(6) motion.

However, there is one apparent feature of the present case that does distinguish it from <u>Pinkham</u>:  here, Defendant has now made a counterclaim for a declaratory judgment.  If Plaintiff were to prevail on this counterclaim, it could arguably open the door for an award of attorney's fees in accordance with <u>Foremost</u>, although the Court makes no holding at this time.[9]  Thus, while the Court finds that a resolution of the counterclaim on the merits and in favor of Plaintiff would be an apparent prerequisite to Plaintiff obtaining any award pursuant to Count III, it cannot presently rule out that possibility.  In short, having concluded that Counts I and II survive the present request for judgment on the pleadings and recognizing that the Defendant's counterclaim also remains pending, the Court denies the Motion as to Count III.

---

[8] The Court notes that several participants in the present action also participated in <u>Pinkham</u> yet none of the motion papers seek to distinguish Judge Hornby's opinion nor to ride its coattails.

[9] The Court acknowledges that Count III as pled pre-dates Defendant's counterclaim.  To the extent that Plaintiff maintains that <u>Foremost</u> would allow her to state a common law claim for attorney's fees even in the absence of any counterclaim by her insurer, the Court disagrees.

In closing, the Court acknowledges that Defendant also has objected to Plaintiff raising various allegations regarding the appraisal process that were not included in her Complaint.  (See Def. Reply (ECF No. 17), PageID #s 233–36.)  On the record presented and in light of the analysis above, the Court declines to resolve these specific objections.  Rather, the Court simply notes that the differing and expanded factual narratives that have developed via the responsive pleadings and the briefing related to this Motion make it apparent to the Court that this case is ill-suited for a judgment on the pleadings.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 7th day of December, 2020.