*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *ANGELA MUSTO,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *No. 1:20-cv-00188-GZS* |
| | ) |
| *LIBERTY INSURANCE* | ) |
| *CORPORATION d/b/a* | ) |
| *LIBERTY MUTUAL,* | ) |
| | ) |
| *Defendant* | ) |

*RECOMMENDED DECISION ON MOTIONS FOR SUMMARY JUDGMENT*

This insurance case arises from a dispute over the amount of loss suffered by Angela Musto when a malfunctioning wood-pellet stove caused smoke damage to her home. Musto brings claims of breach of contract and unfair settlement practices against her insurer, Liberty Mutual, alleging that it has failed to fully reimburse her for her loss and attempted to subject her to an appraisal process that is contrary to her insurance policy and Maine law. *See* Complaint and Demand for Jury Trial ("Complaint"), Exh. 1 (ECF No. 40-1), attached to the Parties' Joint Stipulated Record for Summary Judgment Motion Practice ("Stipulated Record") (ECF No. 40). Liberty Mutual, on the other hand, denies any liability and has filed a counterclaim seeking declaratory relief on the basis that an appraisal award determining the amount of Musto's loss is valid and binding. *See* Defendant['s Answer & Counterclaim] (ECF No. 5). Both sides have moved for summary judgment – Musto as to all claims but damages and Liberty Mutual as to all claims. *See* Plaintiff's Motion[] for Summary Judgment ("Plaintiff's MSJ") (ECF No. 42); Defendant['s] Motion for Summary Judgment ("Defendant's MSJ") (ECF No. 41). For the reasons that follow, I recommend that the court grant in part and deny in part each party's motion.

1

## I.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "A dispute is genuine if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Johnson,* 714 F.3d at 52. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Brooks v. AIG SunAm. Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (quoting *Clifford v. Barnhart,* 449 F.3d 276, 280 (1st Cir. 2006) (emphasis omitted)); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion

separately, drawing inferences against each movant in turn." *Id.* (citation omitted); *see also, e.g., Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se.*  Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.  As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

   The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56.  The moving party must first file a statement of material facts that it claims are not in dispute.  *See* Loc. R. 56(b).  Each fact must be set forth in a numbered paragraph and supported by a specific record citation.   *See id*.  The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]"  Loc. R. 56(c).  The nonmovant likewise must support each denial or qualification with an appropriate record citation.  *See id*.  The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation.  *See id*.  The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d).  Again, each denial or qualification must be supported by an appropriate record citation.  *See id*.

Local Rule 56 directs that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II.  Factual Background

The parties' statements of material facts, credited to the extent that they are either admitted or supported by record citations in accordance with Local Rule 56, reveal the following.[1]

On February 20, 2019, Musto's wood-pellet stove malfunctioned, causing smoke damage to the structure and contents of her home in Litchfield.  Plaintiff's Statement of Undisputed Facts ("Plaintiff's SMF") (ECF No. 42-1), attached to Plaintiff's MSJ, ¶¶ 6-7; Defendant's [R]esponses to Plaintiff's [S]tatement of [M]aterial [F]acts ("Defendant's Opposing SMF"), commencing on page 1 of Defendant['s] Opposing Statement of Facts . . . ("Defendant's Combined SMF") (ECF No 47), ¶¶ 6-7.  At the time of the loss, Musto's home was insured by Liberty Mutual under the terms of a homeowner's policy, which provided coverage for, among other things, damage to

---

[1] Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise.  To the extent that I have incorporated one side's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given.  I have omitted qualifications that are unsupported by the citation(s) given or are redundant.  To the extent that I have taken into consideration a denial of a statement, I have determined that the denial is supported by the citation(s) given.

4

the dwelling (Coverage A), damage to the contents of the dwelling (Coverage C), and loss of use (Coverage D).  Plaintiff's SMF ¶¶ 1-5; Defendant's Opposing SMF ¶¶ 1-5.  Musto timely notified Liberty Mutual of the loss, and Liberty Mutual sent her a reservation of rights letter on March 4, 2019.  Plaintiff's SMF ¶ 11; Defendant's Opposing SMF ¶ 11; Defendant's Local Rule 56(b) Statement of Material Facts ("Defendant's SMF") (ECF No. 41-2), attached to Defendant's MSJ (ECF No. 41), ¶ 4; Plaintiff's Response to Defendant's Statement of Material Facts ("Plaintiff's Opposing SMF"), commencing on page 1 of Plaintiff's Response to Defendant's Statement of Material Facts and Plaintiff's Statement of Additional Material Facts ("Plaintiff's Combined SMF") (ECF No. 46), ¶ 4; Exh. 4 (ECF No. 40-4), attached to Stipulated Record.[2]  Thereafter, an engineering firm retained by Liberty Mutual inspected Musto's pellet stove on March 8, 2019, and determined that its failure was caused by a power loss.  Defendant's SMF ¶¶ 6, 8; Plaintiff's Opposing SMF ¶¶ 6, 8.  After receiving the engineering report on March 29, 2019, Liberty Mutual wrote to Musto on April 8, 2019, and informed her that it had determined that the pellet stove's failure was a covered event under the terms of her policy and that its valuation of the loss was $8,542.42 for the dwelling and $3,776.81 for personal property.  Defendant's SMF ¶¶ 7-10; Plaintiff's Opposing SMF ¶¶ 7-10; Exh. 7 (ECF No 40-7), attached to Stipulated Record, at 1-3.  In a subsequent letter to Musto dated May 4, 2019, Liberty Mutual updated its valuation of the

---

[2]  In many of her responses to Liberty Mutual's statements of fact based on emails or letters, Musto "admits" only that the document in question was "sent" or "issued" and that it "speaks for itself."  Courts have long disdained such vague and unhelpful responses.  *Cf. State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001) ("Another unacceptable device, used by lawyers who would prefer not to admit something that is alleged about a document in a complaint (or who may perhaps be too lazy to craft an appropriate response to such an allegation), is to say instead that the document 'speaks for itself.'").  I interpret Musto's "speaks for itself" responses to be admissions.  In the alternative, to the extent Musto intended for her "speaks for itself" responses to be less than full admissions, those responses do not properly controvert the corresponding statements of fact and, therefore, those statements of fact are deemed admitted to the extent they are supported by record citations.  *See* Loc. R. 56(f).

loss to $9,358.77 for the dwelling and $4,033.36 for personal property.   Defendant's SMF ¶ 11;

Plaintiff's Opposing SMF ¶ 11; Exh. 8 (ECF No. 40-8), attached to Stipulated Record, at 1.

On May 23, 2019, Musto submitted a demand for an appraisal in accordance with the

portion of her policy that provided as follows:

> **Appraisal**.  If you [Musto] and we [Liberty Mutual] fail to agree on the amount of
> loss, either may demand an appraisal of the loss.   In this event, each party will
> choose a competent appraiser within 20 days after receiving a written request from
> the other.   The two appraisers will choose an umpire.   If they cannot agree upon an
> umpire within 15 days, you or we may request that the choice be made by a judge
> of a court of record in the state where the "residence premises" is located.   The
> appraisers will separately set the amount of loss.   If the appraisers submit a written
> report of an agreement to us, the amount agreed upon will be the amount of loss.   If
> they fail to agree, they will submit their differences to the umpire.   A decision
> agreed to by any two will set the amount of loss.

Defendant's SMF ¶¶ 12, 14; Plaintiff's Opposing SMF ¶ 12, 14; Exh. 2 (ECF No. 40-2), attached

to Stipulated Record, at 19; *see also* 24-A M.R.S.A. § 3002 (Westlaw through 2021 1st Special

Sess.) (mandating the inclusion of such a provision in standard Maine fire policies).   Musto

selected Brian Condon, Jr., Esq., to serve as her appraiser.   Defendant's SMF ¶ 13; Plaintiff's

Opposing SMF ¶ 13.

Liberty Mutual received Musto's appraisal demand on June 3, 2019, and in a letter dated

June 18, 2019, objected to the demand based on its concerns that Condon was not disinterested

and Musto's home had yet to be cleaned so as to allow for assessment of the damage; nevertheless,

it nominated William Reynolds to serve as its appraiser.   Plaintiff's SMF ¶ 17; Defendant's

Opposing SMF ¶ 17; Defendant's SMF ¶ 12; Plaintiff's Opposing SMF ¶ 12; Exh. 10

(ECF No. 40-10), attached to Stipulated Record, at 4.   After Condon confirmed that he was

disinterested, Liberty Mutual agreed on June 20, 2019, to proceed with the appraisal process.

Defendant's SMF ¶ 21; Plaintiff's Opposing SMF ¶ 21; Exh. 11 (ECF No. 40-11), attached to

Stipulated Record.   Thereafter, the parties signed a memorandum of appraisal in which they

6

memorialized their decision to proceed with the appraisal process in accordance with the terms of the policy and submit the question of the amount of Musto's loss – in terms of the damage to her dwelling and personal property as well as her loss of use – to Condon and Reynolds.   Defendant's [A]dditional [S]tatement of [F]acts in [O]pposition to Plaintiff's Motion for Summary Judgment ("Defendant's Additional SMF"), commencing on page 26 of Defendant's Combined SMF, ¶ 57; Exh. 8 (ECF No. 47-8), attached thereto; Plaintiff's Response to Defendant's Additional Statement of Material Facts ("Plaintiff's Reply SMF") (ECF No. 50) ¶ 57.

The two appraisers, Condon and Reynolds, selected Christopher Wharff to serve as the umpire.  Plaintiff's SMF ¶ 31; Defendant's Opposing SMF ¶ 31.  Condon emailed his appraisal estimate to Reynolds on September 10, 2019, and Reynolds emailed his appraisal estimate to Condon on October 11, 2019.  Defendant's Additional SMF ¶¶ 58-59; Exhs. 2-3 (ECF Nos. 47-2 to 47-3), attached thereto; Plaintiff's Reply SMF ¶¶ 58-59.   Following receipt of Reynolds's appraisal estimate, Condon agreed to present the appraisal estimates to Wharff.   Defendant's Additional SMF ¶ 60; Exh. 3, attached thereto, at 1; Plaintiff's Reply SMF ¶ 60.[3]  In the meantime, Liberty Mutual sent a letter dated October 10, 2019, to Condon, Reynolds, and Wharff requesting that they give the parties the opportunity to present evidence to them regarding the amount of loss. Defendant's SMF ¶ 25; Plaintiff's Opposing SMF ¶ 25; Exh. 14 (ECF No. 40-14), attached to Stipulated Record.  On October 16, 2019, Reynolds emailed Condon and Wharff and stated as follows:

> As [Condon] knows, we have been unable to reach an agreement on this matter after both having prepared our estimates and as such will require your involvement as the selected umpire; I attach both evaluations for your information, [Wharff]. You will also note that I am attaching a correspondence from counsel for Liberty Mutual, a copy of which I believe you may already have, in which it is requested that a full panel hearing with testimony and documents presentation take place at

---

[3] Musto did not properly controvert this fact; rather, she left her response to it blank.  *See* Plaintiff's Reply SMF ¶ 60. Because the statement is supported by the cited material, I deem it admitted.  *See* Loc. R. 56(f).

the loss location. I am very much in favor of such a meeting in order that the accurate scope of damages at the time of loss can be ascertained.

Defendant's Additional SMF ¶ 61; Exh. 4 (ECF No. 47-4), attached thereto, at 1; Plaintiff's Reply SMF ¶ 61.[4]

November 6, 2019, was selected as the date on which Condon, Reynolds, Wharff, and the parties would visit Musto's home. Defendant's SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26; Exh. 15 (ECF No. 40-15), attached to Stipulated Record, at 2.[5] On that day, however, Condon cancelled the inspection based, in part, on Liberty Mutual's request to present evidence. Defendant's SMF ¶ 27; Plaintiff's Opposing SMF ¶ 27; Exh. 15, attached to Stipulated Record, at 2. On November 26, 2019, Musto wrote to Liberty Mutual through her newly-retained counsel – the same counsel who represents her in this action – and indicated that it was her "position" that Liberty Mutual had "waived the appraisal process" because it (1) selected Reynolds as its appraiser despite the fact that he was not disinterested due to "his long-standing financial connection with Liberty Mutual[,]" (2) attempted to schedule an appraisal hearing on November 6, 2019, "involving the presentation of evidence and advocacy by attorneys" that was not permitted by the policy or Maine law, and (3) "failed to complete the appraisal process in a timely fashion in

---

[4] In her statement of facts, Musto asserts that Condon and Reynolds never exchanged their appraisal estimates and that they never submitted their estimates to Wharff for resolution. *See* Plaintiff's SMF ¶¶ 28-29, 32. She cites an affidavit of Condon saying as much. *See* Exh. 23 (ECF No. 40-23), attached to Stipulated Record, ¶¶ 7-8, 11. Nevertheless, in responding to Liberty Mutual's additional statements of fact, Musto admits that Condon and Reynolds emailed each other copies of their appraisal estimates, that Condon agreed to getting Wharff involved in the appraisal process, and that Reynolds emailed copies of both estimates to Wharff. Defendant's Additional SMF ¶¶ 58-61; Exhs. 2-3, attached thereto; Plaintiff's Reply SMF ¶¶ 58-61. By failing to deny or qualify such statements by citing to Condon's affidavit, Musto has, in effect, conceded that there is not a genuine dispute that Condon and Reynolds exchanged appraisal estimates and that their estimates were submitted to Wharff for resolution.

[5] Musto purports to deny this fact because the cited materials do not reflect whether she consented to the visit on November 6, 2019. Plaintiff's Opposing SMF ¶ 26. Nevertheless, she does not dispute that a visit was scheduled. *Id.*

accordance with the provisions of" the policy.  Plaintiff's SMF ¶ 23; Defendant's Opposing SMF ¶ 23; Exh. 22 (ECF No. 40-22), attached to Stipulated Record, at 3-4.[6]

On December 4, 2019, Condon informed Reynolds and Wharff that Musto's counsel had told him to "stand down" based on Musto's position that Liberty Mutual had waived the appraisal process and that Reynolds was not "impartial."  Defendant's Additional SMF ¶ 62; Exh. 5 (ECF No. 47-5), attached thereto; Plaintiff's Reply SMF ¶ 62.  On December 10, 2019, Liberty Mutual wrote to Condon, Reynolds, and Wharff and requested that they move forward with the appraisal process by scheduling a site inspection.  Defendant's Additional SMF ¶ 63; Exh. 6 (ECF No. 47-6), attached thereto; Plaintiff's Reply SMF ¶ 63.  Wharff responded, "I am as the agreed Umpire in this Appraisal also requesting an inspection so that I have all the information available in order to make a determination with a full understanding of the facts involved in this loss." Defendant's Additional SMF ¶ 64; Exh. 7 (ECF No. 47-7), attached thereto, at 5; Plaintiff's Reply SMF ¶ 64.  Condon wrote back, "I'm putting the file away until a judge/arbitrator tells me different, not some lawyer in Boston." Defendant's Additional SMF ¶ 65; Exh. 7, attached thereto, at 3; Plaintiff's Reply SMF ¶ 65.[7]  Wharff replied, "I am not in a position to simply quit for whatever reason(s) and neither is Bill Reynolds, both sides will have to agree to abandon the Appraisal before you, me or [Reynolds] can close our files."  Defendant's Additional SMF ¶ 66; Exh. 7, attached thereto, at 2; Plaintiff's Reply SMF ¶ 66.  Condon responded that he would not "appear[] at anything that would be a testimonial process or one with witnesses, or one with anyone presenting evidence" because he did not believe that such a process was allowed under Maine law.

---

[6] The parties dispute the proper characterization of this letter.  Musto asserts that it demonstrates she "objected to the appraisal process and withdrew her request for an appraisal[.]"  Plaintiff's SMF ¶ 23.  Liberty Mutual denies the letter withdrew Musto's appraisal demand. *See* Defendant's Opposing SMF ¶ 23.  Neither party, however, disputes the authenticity of the letter – indeed they both cite it in support of their respective positions. *See* Plaintiff's SMF ¶ 23; Defendant's Opposing SMF ¶ 23.  As such, I have attempted to provide a more neutral description.

[7] The phrase "some lawyer in Boston" appears to be a reference to Liberty Mutual's counsel.

Defendant's Additional SMF ¶ 67; Exh. 7, attached thereto, at 2; Plaintiff's Reply SMF ¶ 67.

Condon did not participate further in the appraisal process following this exchange.  Plaintiff's

SMF ¶ 34; Defendant's Opposing SMF ¶ 34.[8]

On February 18, 2019, Reynolds and Wharff issued the following appraisal award:

|  | VALUE | LOSS AND DAMAGE |
|---|---|---|
| Ist Item Dwelling (A) |  | $20,500.00 |
| 2nd Item Contents (B) |  | $8,700.00 |
|  | [Replacement Cost Value] | $29,200.00 |
|  | Deprec[iation] | -3,750.00 |
|  | [Actual Cash Value[9]] | $24,450.00 |
|  | Ded[uctible] | -2,500.00 |
|  | Claim | **$22,950.00** |

[8] My recitation incorporates Liberty Mutual's qualification.  To the extent that Liberty Mutual requests that the court strike the statement as originally worded – that "Condon did not participate in the meeting and/or conference between" Reynolds and Wharff "resulting in the Declaration of Appraisers of February 18, 2020[,]" Plaintiff's SMF ¶ 34 – its request is denied.  Liberty Mutual argues that Musto "did not raise this allegation at any point in her Complaint or during discovery."  Defendant's Opposing SMF ¶ 34.  Musto was not obligated to plead specific facts in her complaint, and this fact falls under the umbrella of her more general allegation that the appraisal process was not valid.  *See* Complaint at 5; *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which [s]he bases [her] claim.  To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (citation and internal punctuation omitted)).  Furthermore, I am not convinced that the interrogatories cited by Liberty Mutual obliged Musto to disclose this specific allegation.  *See* Exh. 20 (ECF No. 40-20), attached to Stipulated Record.  Even if they did, Liberty Mutual was already aware of the allegation from Musto's response to its motion for judgment on the pleadings, rendering any omission on Musto's part harmless.  *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings (ECF No. 13) at 14-15; *cf. Calvao v. Town of Framingham*, 599 F.3d 10, 18-19 (1st Cir. 2010) (affirming the district court's conclusion that any omission on the part of the defendant in responding to the plaintiffs' interrogatories was rendered harmless by the fact that the plaintiff had received the same information earlier in the case).

[9] Actual cash value "means the replacement cost of an insured item of property at the time of loss, less the value of physical depreciation as to the item damaged."  24-A M.R.S.A. § 3004-A (Westlaw through 2021 1st Special Sess.); *see also* Exh. 2, attached to Stipulated Record, at 33.  The policy at issue provides that Liberty Mutual "will pay no more than the actual cash value of the damage" to a building under Coverage A or B "until actual repair or replacement is complete."  Exh. 2, attached to Stipulated Record, at 18.  Such provisions are common in homeowner's insurance policies.  *See, e.g.*, *Cook v. USAA Cas. Ins. Co.*, 1:16-cv-00207-JCN, 2020 WL 556394, at *8 (D. Me. Feb. 4, 2020) (discussing the difference between replacement cost and actual cash value).

Defendant's SMF ¶¶ 28-29; Plaintiff's Opposing SMF ¶¶ 28-29; Exh. 12 (ECF No. 40-12), attached to Stipulated Record.[10]  Reynolds and Wharff did not award any amount for Musto's loss of use.  Defendant's SMF ¶ 30; Plaintiff's Opposing SMF ¶ 30; Exh. 12, attached to Stipulated Record.  In an email to Musto's counsel, Wharff noted that Reynolds had signed the award thereby "indicating his agreement with [Wharff's] determination."  Plaintiff's SMF ¶ 43; Exh. A (ECF No. 42-1), attached thereto, at 1; Defendant's Opposing SMF ¶ 43.[11]  Upon receipt of the award, Liberty Mutual issued two checks to Musto reflecting the amount of the award minus prior payments.  Defendant's SMF ¶ 31; Plaintiff's Opposing SMF ¶ 31; Exh. 16 (ECF No. 40-16), attached to Stipulated Record; Plaintiff's SMF ¶ 54; Defendant's Opposing SMF ¶ 54.[12]

Musto has obtained estimates that it will cost $16,350.11 to clean the interior of her home, $51,747.08 to restore her home to its pre-loss condition, and $13,040 to remove and replace the exterior windows of her home.  Plaintiff's SMF ¶¶ 50-52; Defendant's Opposing SMF ¶¶ 50-52.

### III.  Discussion

### A.  Count I: Breach of Contract

Musto asserts that the undisputed facts demonstrate that Liberty Mutual has breached the terms of her homeowner's policy because it failed to fully reimburse her for the damage to her home and personal property and refused to compensate her for additional living expenses stemming from the loss of use of her home.  *See* Plaintiff's MSJ at 5-7.  She argues that Liberty

---

[10]  Musto purports to deny this fact, but only does so by reiterating her position that the award was not valid.  Plaintiff's Opposing SMF ¶ 28-29.  She does not dispute, however, that Reynolds and Wharff issued an award or that Liberty Mutual accurately recounted the award.  *Id.*

[11]  The parties dispute the proper characterization of this email.  Musto claims it shows that Wharff "alone made a determination of the amount of the loss."  Plaintiff's SMF ¶ 43.  Liberty Mutual denies this by citing the same email and pointing out that the policy provides that a decision agreed to by any two of the three appraisers is binding.  Defendant's Opposing SMF ¶ 43; Exh. 2, attached to Stipulated Record, at 19; Exh. 12, attached to Stipulated Record.  As before, I have attempted to provide a more neutral description of the email.

[12]  Musto admits that Liberty Mutual tendered two checks in light of the appraisal award, qualifying that statement only insofar as she argues that the appraisal award was invalid and asserts that she did not accept or cash the checks.  Defendant's SMF ¶ 31; Plaintiff's Opposing SMF ¶ 31.  As such, setting aside questions of validity, there is no triable issue as to whether Liberty Mutual tendered the amount of loss set by the appraisal award to Musto.

Mutual cannot rely on the amount of loss set by the appraisal award to satisfy its contractual obligations because the award was the result of an invalid process.  *Id.* at 7-13.

Liberty Mutual, on the other hand, argues that the appraisal process was valid and that the amount of loss established by the appraisal award is binding.  *See* Defendant's MSJ at 9-12. It asserts that it has fulfilled its contractual obligations by tendering the amount of the award to Musto and is therefore entitled to summary judgment on Musto's breach of contract claim.  *Id.*

Under Maine law, a breach of contract claim has three elements: "(1) breach of a material contract term; (2) causation; and (3) damages."  *Cook*, 2020 WL 556394, at *8 (citation and internal quotation marks omitted).  "The burden of proof in an action for breach of contract . . . is on the plaintiff."  *Me. Energy Recovery Co. v. United Steel Structures*, *Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250.  In this case, Musto's claim that Liberty Mutual has breached its contractual obligation to fully indemnify her for her loss turns on whether she is correct that the appraisal award did not conclusively establish the amount of her loss.

### i.  Background on Insurance Appraisals

For well over a century, "standard fire insurance policies have provided that when the amount of a loss is disputed, either the insurer or the insured can demand arbitration or appraisal to determine the amount of loss, and that no lawsuit can be brought on a claim unless that policy requirement has been met."  *Alfiero v. MetLife Auto & Home Ins. Agency*, CIVIL NO. 2:16-CV-513-DBH, 2017 WL 2804902, at *1 (D. Me. June 28, 2017).  Such provisions, rather than usurping the jurisdiction of the courts, leave "the general question of liability to be judicially determined, and simply provid[e] a reasonable method of estimating and ascertaining the amount of the loss[.]" *Hamilton v. Liverpool & London & Globe Ins. Co.*, 136 U.S. 242, 255 (1890).

In Maine, standard fire policies are required "to provide that in the event of a dispute over the value of an insured loss, one party can demand that each party 'select a competent and disinterested appraiser,' and the two appraisers are to 'select a competent and disinterested umpire.' 'An award in writing . . . of any two . . . shall determine the amount of actual cash value and loss[.]'" *Alfiero*, 2017 WL 2804902, at *1 (quoting 24-A M.R.S.A. § 3002 (Westlaw)). The Law Court has described such provisions – which have been statutorily mandated in Maine since at least 1903[13] – as providing "a speedy method of determining the loss by an impartial tribunal which might view the property, hear the parties, and without being hampered by the strict rules of court procedure, adjust the question most often in dispute between the parties, thus saving, perhaps, expensive litigation in the courts." *Oakes v. Franklin Fire Ins. Co.*, 122 Me. 361, 367, 120 A. 53, 55 (1923).

Given these important purposes, courts do not lightly "interfere with an . . . appraisal award but will indulge in every reasonable presumption to sustain it. Accordingly, an award should not be vacated unless it clearly appears that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers." 15 Steven Plitt et al., *Couch on Ins.* § 213:34, Westlaw (database updated June 2021) (footnotes omitted)[14]; *see also, e.g.*, *Bangor Sav. Bank v. Niagara Fire Ins. Co.*, 85 Me. 68, 73-74, 26 A. 991, 992 (1892) ("Although the award made by the appraisers may be regular and sufficient in form, it may undoubtedly be

---

[13] *See* R.S. ch. 49, § 4(VII) (1903), http://lldc.mainelegislature.org/Open/RS/RS1903/RS1903_c049.pdf.

[14] In citing *Couch on Insurance* for the general parameters of insurance law in instances where the Law Court has not already spoken, I am making "an informed prophecy" that the Law Court would do the same. *Phoung Luc v. Wyndham Mgmt. Corp.*, 496 F.3d 85, 88 (1st Cir. 2007) (noting that when a state's highest court has not addressed an issue, a federal court may "consult other sources" and "make an informed prophecy about what rule the state courts would likely follow" (citation and internal quotation marks omitted)). Indeed, the Law Court often relies on *Couch*, as does the First Circuit. *See, e.g.*, *Estate of Frye v. MMG Ins. Co.*, 2018 ME 44, ¶ 16, 182 A.3d 158, 163-64 (citing *Couch*); *Barnie's Bar & Grill, Inc. v. U.S. Liability Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613, 615-16 (same); *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 5, 107 A.3d 621, 624 (same); *Maldonado-Viñas v. Nat'l W. Life Ins. Co.*, 862 F.3d 118, 122 (1st Cir. 2017) (relying on *Couch* where "[n]either the district court nor" the plaintiffs cited "any authority" on an issue of insurance law and there was no state caselaw "directly on point").

impeached for fraud or misconduct on the part of the appraisers, or on other grounds which vitiate all awards.").[15]

### ii. Liberty Mutual's Alleged Waiver

In arguing that the appraisal award in this case should be set aside, Musto first asserts – albeit without citing any supporting authority – that Liberty Mutual "waived the appraisal process by objecting to [her] request for appraisal[.]" Plaintiff's MSJ at 8.

Musto is correct that parties may expressly or impliedly waive an insurance policy appraisal provision. *See* 15 *Couch on Ins.* § 210:64; *Mowry & Payson, Inc. v. Hanover Fire Ins. Co.*, 106 Me. 308, 309-15, 76 A. 875, 876-78 (1909) (discussing circumstances under which a party might be held to have waived its right to have the amount of loss be determined by appraisal). However, "[b]ecause public policy favors arbitration, waiver of an insurance policy arbitration or appraisal clause is generally not favored." 15 *Couch on Ins.* § 210:64 (footnote omitted). As such, "to be construed as waiving the right" to an appraisal, a party "must clearly indicate the intent to waive" through conduct that is "inconsistent with the notion that [it] treated the [appraisal] provision as in effect" or "might be reasonably construed as showing that [it] did not intend to avail [itself] of such provision[.]" *Id.*

In this case, although Liberty Mutual did initially object to Musto's appraisal demand based on its concerns that her house had not been cleaned enough to assess the smoke damage and that her appraiser, Condon, might not be disinterested, it also nominated Reynolds as its appraiser in the same letter outlining those concerns. Plaintiff's SMF ¶ 17; Defendant's Opposing SMF ¶ 17; Exh. 10, attached to Stipulated Record, at 4. If Liberty Mutual truly intended to waive the appraisal

---

[15] I note that neither party has suggested that the appraisal process is subject to the requirements of Maine's Uniform Arbitration Act, *see* 14 M.R.S.A. §§ 5927-5949 (Westlaw through 2021 1st Special Sess.), nor does it appear that the Law Court has so held, *see, e.g.*, *Cnty. Forest Prods., Inc. v. Green Mtn. Agency, Inc.*, 2000 ME 161, ¶¶ 30-34, 758 A.2d 59, 66-67 (discussing the insurance appraisal process without reference to the Uniform Arbitration Act).

process, as Musto suggests, it seems unlikely that it would have bothered to nominate Reynolds. Were there any doubt on this point, Liberty Mutual explicitly agreed to go forward with the appraisal process a mere two days after lodging its initial objections while still within the 20-day timeframe provided by the policy for it to choose an appraiser.  Defendant's SMF ¶ 21; Plaintiff's Opposing SMF ¶ 21; *see* 15 *Couch on Ins.* § 210:57 ("Generally speaking, a refusal or delay by either party to comply with the other's demand for an appraisal does not forfeit the rights of the party in default to an appraisal where he or she later signifies a willingness to comply with the policy's provision for an appraisal, provided that the conditions have not become so altered during the delay that the rights of the other party have been prejudiced.") (footnote omitted).

  Accordingly, Liberty Mutual did not waive the appraisal process by initially objecting to Musto's demand.

### iii.  Liberty Mutual's Request to Present Evidence & Musto's Purported Revocation

  Musto next argues – again without citing any supporting authority – that Liberty Mutual "corrupted the appraisal process" and caused "inordinate delay" by seeking "to schedule appraisal inspections and appraisal hearings."  Plaintiff's MSJ at 8-9.  She asserts that her policy "does not provide for appraisal hearings, appraisal inspections or adversarial proceedings in which evidence is presented to the selected appraisers and the umpire as if they were a panel of arbitrators."  *Id.* at 9.  According to Musto, she was "forced to object to the appraisal process and revoke her request for an appraiser because of" Liberty Mutual's conduct.  *Id.* at 8.

  Liberty Mutual counters that its request to present evidence is a moot point because it was never actually given the opportunity to do so.  *See* Defendant's MSJ at 15.  In any event, it argues that its request was not "violative of the Policy or Maine law" because neither "prohibit a party to an appraisal from being afforded the opportunity to present evidence to the appraisal panel in

support of its position." *Id.* Among other authorities, it cites the Law Court's decision in *Oakes v. Franklin Fire Ins. Co.* for the proposition that parties must be given an opportunity to be heard during the appraisal process. *See id.* at 16.

As an initial matter, I am not persuaded by Musto's suggestion that she could unilaterally "revoke" her appraisal demand after she demanded an appraisal and Liberty Mutual agreed to proceed with the appraisal process. Plaintiff's MSJ at 8. As the United States District Court for the District of New Mexico held when interpreting a similar appraisal provision,

> [T]he Court finds that Plaintiffs' . . . "withdrawal" from the appraisal process was not proper under the contractual terms of the appraisal agreement. The insurance policy specified that either party may make "written demand for appraisal of the loss." Once such a demand was made, the Plaintiffs were contractually bound to submit to the appraisal process until a binding decision regarding the disputed loss was reached by any two of the appraisers or the Umpire. The appraisal agreement does not contemplate any withdrawal from the process by the parties, and the Court can only assume that such a withdrawal would constitute a breach of the insurance contract.

*U.S. Fid. & Guar. Corp. v. Peking Palace Chinese Rest., Inc.*, NO. CIV 97-646 MV/JHG, 1999 WL 35808164, at *5 (D.N.M. Dec. 1, 1999) (citation omitted).

With that said, there have been some situations in which courts have held that an insured was justified in refusing to proceed with the appraisal process due to an insurer's improper conduct. *See, e.g.*, *Uhrig v. Williamsburg City Fire Ins. Co.*, 4 N.E. 745, 746 (N.Y. 1886) ("Under the arbitration clause it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith, so as to defeat the real object of the clause, it absolved the other party from compliance therewith . . . . A claimant under such a policy cannot be tried [sic] up forever, without his fault and against his will, by an ineffectual arbitration. The evidence tended to show that the defendant failed and refused to go on with that arbitration."). This case does not present such a situation, however, because Liberty

16

Mutual's request to be heard by and present evidence to the appraisers and umpire was not improper under the terms of the policy and Maine law.

Indeed, the Law Court resolved the question of whether a party to an insurance appraisal has the right to be heard and present evidence almost 100 years ago. *See Oakes*, 122 Me. at 364-65, 120 A. at 54. At the time, Maine mandated that standard fire policies include the following provision:

> In case of loss under this policy and a failure of the parties to agree as to the amount of loss, it is mutually agreed that the amount of such loss shall be referred to three disinterested men, the company and the insured each choosing one out of the three persons to be named by the other, and the third being selected by the two so chosen; the award in writing by a majority of the referees shall be conclusive and final upon the parties as to the amount of loss or damage, and such reference unless waived by the parties, shall be condition precedent to any right of action in law or equity to recover for such loss[.]

R.S. ch. 53, § 5 (1916), http://lldc.mainelegislature.org/Open/RS/RS1916/RS1916_c053.pdf. The Law Court noted,

> This provision we construe to contemplate something more than a mere appraisement by the referees upon a view and such information as they see fit to obtain, and requires notice to the parties and *an opportunity to present evidence and be heard.* The Legislature, having made the result of such reference conclusive and binding on the parties, must have intended that the parties should have the right to be present at all hearings and also *to be heard upon any matters pertaining to the amount of the loss*.

*Oakes*, 122 Me. at 364-65, 120 A. at 54 (emphasis added); *id.*, 122 Me. at 366, 120 A. at 55 (further noting "that the referees have the right to determine what kind of evidence they will receive and are not bound by the strict rules governing procedure in court").

Musto argues that *Oakes* has no bearing on this case because it involves a statute that is "no longer on the books" and because her policy and the current Maine statute "do not provide for the selection of 'three disinterested men' to decide the case." Plaintiff's Memorandum in

Opposition to Defendant['s] Motion for Summary Judgment ("Plaintiff's Opposition") (ECF No. 45) at 17.  I disagree.

Although the appraisal provision that was at issue in *Oakes* is not identical to the one currently mandated by Maine law, *see* 24-A M.R.S.A. § 3002 (Westlaw), it is similar enough to be instructive.  Indeed, Judge Hornby recently cited *Oakes* when discussing the modern appraisal process, *see Alfiero*, 2017 WL 2804902, at *1, and Musto does not cite – nor does there appear to be any – more recent caselaw from the Law Court on the issue of a party's right to present evidence. While some other state courts have held that appraisers and umpires "are not required to hear and receive evidence," 15 *Couch on Ins.* § 211:57 (footnote omitted), this court, as a federal court applying state law, is not in a position to "create new rules or significantly expand existing rules[]" but is instead "bound by the teachings of the state's highest court[,]" *Phoung Luc*, 496 F.3d at 88 (citation and internal quotation marks omitted).

The Law Court's teachings in *Oakes* apply with equal force to the appraisal provision at issue in this case.  Like the provision in *Oakes*, the appraisal provision here makes the result of the appraisal process conclusive and binding on the parties but does not explicitly provide for the presentation of evidence.  Those are the same circumstances that led the Law Court to conclude in *Oakes* that the legislature must have intended for the parties to have the opportunity to be heard and present evidence.

Because Liberty Mutual's request to be heard was permitted by Maine law, it cannot have constituted a corruption of the appraisal process or a cause of undue delay, and the appraisal award cannot be vacated on that basis.  To the extent that Musto is arguing that Liberty Mutual caused other undue delay separately from its request to be heard, she has failed to present any evidence

showing as much.[16]   Furthermore, she is simply incorrect in suggesting that, as of November 26, 2019, when she wrote her letter "revoking" her appraisal demand, "the appraisal process had yet to even begin[,]" Plaintiff's MSJ at 8; as discussed above, the appraisal process was well under way by that point.

### iv.  Whether Reynolds was a Disinterested Appraiser

In her complaint, Musto also alleges "on information and belief" that Reynolds was not an independent appraiser because he had an established relationship with Liberty Mutual. Complaint at 5; *Young v. Aetna Ins. Co.*, 101 Me. 294, 298-99, 64 A. 584, 586 (1906) (holding that an appraisal award was not binding on an insured and had to be set aside when the insurer's referee was not disinterested as "required by the statute and the policy").  She reiterates this allegation in her summary judgment briefing but does not point to any supporting evidence. Plaintiff's MSJ at 8.  Rather, she asserts that Liberty Mutual should be "precluded from challenging" her claim that Reynolds was not disinterested because it failed to produce a representative at its corporate deposition who could testify about its relationship with Reynolds despite the fact that she had designated the issue as one for examination in her notice of that deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).  *See* Plaintiff's Opposition at 9-10; Plaintiff's Statement of Additional Material Facts in Response to Defendant's Statement of Material Facts ("Plaintiff's Additional SMF"), commencing on page 10 of Plaintiff's Combined SMF, ¶ 7.

Liberty Mutual denies that its Rule 30(b)(6) deponent was unprepared, *see* Defendant Liberty Mutual's Reply to Plaintiff's Statement of Additional Material Facts Pursuant to Local

---

[16]  Musto notes that Reynolds "did not even attempt to inspect the loss until September 2019, 4 months after Plaintiff had requested an appraisal." Plaintiff's Opposition at 10-11.  She does not, however, cite to any authority suggesting that such conduct constitutes undue delay or, more importantly, any evidence suggesting that Liberty Mutual played any role in scheduling Reynolds's inspection.  *Id.*

Rule 56(d) ("Defendant's Reply SMF") (ECF No. 49) ¶ 7, but I need not resolve that dispute.  Even

assuming that Musto is right, she had an obligation to raise the issue prior to the close of discovery,

when the court could have compelled Liberty Mutual to produce a more prepared representative

and/or provided other relief pursuant to Federal Rule of Civil Procedure 37.  *See, e.g.*, *McDonough*

*v. City of Portland*, No. 2:15-cv-153-JDL, 2015 WL 12683663, at *4-5 (D. Me. Dec. 31, 2015)

(holding that a plaintiff's objection to a deponent's assertion of privilege during his deposition was

untimely raised when the plaintiff "did not call it to the court's attention prior to the expiration of

the discovery deadline" so as to allow for the reopening of the deposition if the plaintiff prevailed

on his objection).  Because Musto failed to raise the issue in a timely manner, she cannot now seek

to preclude Liberty Mutual from correctly pointing out that she has not supported her assertion

that Reynolds was not disinterested with any evidence.  *Cf. Interstate Narrow Fabrics, Inc. v.*

*Century USA, Inc.*, 218 F.R.D. 455, 461-62 (M.D.N.C. 2003) (declining to preclude a corporate

defendant from introducing certain evidence during summary judgment on the basis that its Rule

30(b)(6) designee was "inappropriately prepared to fully answer questions" when the plaintiff had

not fulfilled its "obligation, if it desired answers to its questions, to file a motion to compel" and/or

seek other relief under Rule 37).

Because Musto has not presented any evidence to support her claim that Reynolds was not

disinterested, the appraisal award cannot be set aside on that basis.

### v. Alleged Improprieties in Appraisal Award Process

Musto further challenges the validity of the appraisal award on the bases that:

- Condon was not permitted to participate in the process culminating in the appraisal award;

- There is no evidence that the differences between Condon's and Reynolds's appraisal estimates were identified and submitted to Wharff for resolution;

- Wharff improperly acted as an appraiser in determining the amount of loss when his proper role as umpire was limited to resolving the differences between Condon's and Reynolds's appraisal estimates; and

- Wharff demonstrated his partiality by rendering an award in consultation with Reynolds only.

*See* Plaintiff's MSJ at 10-13.[17]  These arguments are unavailing.

First, Musto's suggestion that Condon was not allowed to participate in the appraisal award process is disingenuous when it is undisputed that Condon was the one who indicated that he would not participate further in the appraisal process because Musto's counsel told him to "stand down." Defendant's Additional SMF ¶ 62; Exh. 5, attached thereto; Plaintiff's Reply SMF ¶ 62; *cf. U.S. Fid. & Guar. Corp.*, 1999 WL 35808164, at *5 (declining to give effect to a plaintiff's "disingenuous" and "erroneous conclusion" that the appraisal process was over by penalizing the defendant for going forward with the appraisal process as it was contractually bound to do). Furthermore, Wharff explicitly informed Condon that, in his view, the appraisal process could be abandoned only by agreement of both the insurer and insured, Defendant's Additional SMF ¶ 66; Exh. 7, attached thereto, at 2; Plaintiff's Reply SMF ¶ 66, undermining any suggestion that Condon was unaware or surprised that the appraisal process would go forward without his participation.

Second, contrary to Musto's contention that Condon and Reynolds never submitted the differences in their appraisal estimates to Wharff, Reynolds emailed both his and Condon's appraisal estimates to Wharff (with a copy to Condon), indicated that they were unable to agree, and asked for Wharff's assistance as umpire. Defendant's Additional SMF ¶ 61; Exh. 4, attached thereto; Plaintiff's Reply SMF ¶ 61. Musto does not cite any authority for her suggestion that the

---

[17] Liberty Mutual contends that Musto failed to properly raise these points before now and has therefore waived them. *See* Defendant['s] Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 48) at 3.  Unsurprisingly, Musto disagrees. *See* Plaintiff's Memorandum in Reply to [Defendant's Opposition] (ECF No. 51) at 3-4. Given that Liberty Mutual is entitled to summary judgment on the merits of these points, I need not resolve its waiver argument.

appraisers needed to identify every point of disagreement in order to properly submit their differences to the umpire.  Nor does she identify any areas of agreement between the two starkly different appraisal estimates.[18]

Third, although Musto is correct that "[a]n umpire, appointed to act 'in matters of difference only,' is bound by findings upon which the appraisers have agreed[,]" she overlooks the fact that the umpire "*becomes a full third appraiser*, whose duty it is to make an independent finding based upon his or her own judgment[,]" as to issues with respect to which the two appraisers disagree.  15 *Couch on Ins.* § 211:6 (emphasis added) (footnote omitted).  Because Condon and Reynolds generally submitted their differences to Wharff, and Musto identifies no areas of agreement between their appraisals, she fails to show that Wharff lacked the "authority" to determine the amount of loss based on his own judgment.  Plaintiff's MSJ at 11.  Rather, that was precisely his task as umpire.

Finally, Musto cites no authority to support her contention that Wharff demonstrated partiality when he determined the amount of loss "in consultation only with" Reynolds.  *Id.*  Again, this argument ignores Condon's unequivocal statement that he would not participate further in the appraisal process unless a judge or arbitrator told him otherwise and overlooks the fact that Wharff had a copy of Condon's appraisal estimate.   As the United States District Court for the Eastern District of Louisiana explained in an analogous case:

> Defendant has pointed to nothing to indicate that substantive *ex parte* discussions between one appraiser and the umpire, without more and particularly after the umpire reviews both sides' materials, are evidence of []partiality.  The contractual language contains no prohibition on such conduct, nor does it contain specific guidelines as to how the appraisers and umpire are supposed to conduct the appraisal.  Furthermore, once both appraisers have an opportunity to participate in the appraisal process, the eventual absence of one appraiser is not grounds to invalidate the award.  The Court therefore cannot say that [the umpire's] and [the

---

[18] For reference, Condon's estimate of Musto's loss was $45,575, while Reynolds's estimate was $19,203.61.  *See* Exh. 23, attached to Stipulated Record, at 5; Exh. 3, attached to Defendant's Additional SMF, at 10.

plaintiff's appraiser's] failure to include [the defendant's appraiser] in the final discussions is evidence of partiality or improper motives in the execution of their contractual duties.

*St. Charles Parish Hosp. Serv. Dist. No. 1 v. United Fire & Cas. Co.*, 681 F. Supp. 2d 748, 752, 756 (E.D. La. 2010).

Moreover, as the United States District Court for the District of New Mexico noted in rejecting a similar argument about an umpire's communication with only one side's appraiser:

> [B]y its very terms, the appraisal agreement contemplates that one appraiser may not necessarily agree with or participate in the decision reached by the other appraiser and the Umpire. The Court believes that the appraisal agreement permits the parties to communicate separately with the Umpire, provided that no fraud or improper bias results. Therefore, the Court considers the . . . interaction between the Defendant's appraiser and the Umpire as complying with the requirements of the appraisal agreement. The appraisers of Plaintiffs and Defendant each had an opportunity to submit their loss calculations to the Umpire. The Umpire came to its final . . . award after receiving certain clarifications from the Defendant's appraiser. Plaintiffs were given the opportunity to participate in this process, but refused. The Court does not find that Defendant's appraiser violated the contractual appraisal agreement by continuing to supply information to the Umpire after Plaintiffs' "withdrawal." Rather, the final appraisal award agreed to by Defendant's Appraiser and the Umpire satisfied the contractual provision that "[a] decision reached by any two will be binding."

*U.S. Fid. & Guar. Corp.*, 1999 WL 35808164, at *5. The same is true here.

### vi.  The Validity of the Appraisal Award

To reiterate, an appraisal award is entitled to "every reasonable presumption to sustain it" and "should not be vacated unless it clearly appears that it was made without authority, or was the result of fraud or mistake, or of the misfeasance or malfeasance of the appraisers." 15 *Couch on Ins.* § 213:34 (footnotes omitted). For the foregoing reasons, Musto has not demonstrated that the appraisal award in this case should be vacated on any of these bases. Accordingly, the appraisal

award is valid and conclusively set the amount of Musto's loss.[19]  Because there is no dispute that Liberty Mutual has tendered the amount of the appraisal award to Musto, it is entitled to summary judgment on Musto's claim for breach of contract alleging that it has an obligation to further reimburse her for her loss.

### B.  Count II: Unfair Settlement Practices

Musto also makes a claim for attorney fees and interest pursuant to Maine's unfair claims settlement practices statute, 24-A M.R.S.A. § 2436-A (Westlaw through 2021 1st Special Sess.), alleging that Liberty Mutual engaged in unfair claims settlement practices by failing to fully reimburse her for her loss and by attempting to subject her to a corrupted appraisal process. *See* Complaint at 4-5; Plaintiff's MSJ at 13-14.  Because this claim hinges on the success of her breach of contract claim, it fails for the same reasons.  Accordingly, Liberty Mutual is entitled to summary judgment on this claim, too.

### C.  Counterclaim for Declaratory Judgment

For reasons that will become clear, I address Liberty Mutual's counterclaim for declaratory judgment before considering Musto's final claim for common law attorney fees.  Liberty Mutual seeks an order in its favor declaring that:

    1.    The appraisal award issued by the panel on February 18, 2020 is binding on the parties;

    2.    Liberty Mutual has fulfilled its duties under the insurance Policy;

    3.    Liberty Mutual is not required to make further payment under the Policy because the appraisal award issued on February 18, 2020 is binding on the parties.

---

[19]  Although Musto asserts that she is entitled to reimbursement for her loss of use, Plaintiff's MSJ at 6-7, she does not contest that the issue was submitted to the appraisers and the umpire, Defendant's Additional SMF ¶ 57; Exh. 8, attached thereto; Plaintiff's Reply SMF ¶ 57; Defendant's SMF ¶ 30; Plaintiff's Opposing SMF ¶ 30; Exh. 12, attached to Stipulated Record.

Defendant['s Answer & Counterclaim] at 14.   Neither party discusses Liberty Mutual's counterclaim in any detail; rather, both merely contend that they are entitled to summary judgment on the counterclaim for the same reasons they argue they are entitled to summary judgment on Musto's claims.   *See* Defendant's MSJ at 18; Plaintiff's MSJ at 15.

The Declaratory Judgments Act authorizes federal courts to grant declaratory relief in cases of actual controversy.   *See* 28 U.S.C. § 2201.   The Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies."   *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992) (footnote omitted).   Instead, it confers on courts "unique and substantial discretion in deciding whether to declare the rights of litigants."   *KG Urban Enters., LLC v. Patrick*, 693 F.3d 1, 27 (1st Cir. 2012) (citation and internal quotation marks omitted).

There can be no doubt that there is an actual controversy between the parties regarding whether the appraisal award in this case is valid and binding as to the amount of Musto's loss. Having resolved that question in Liberty Mutual's favor, it is entitled to summary judgment as to its first requested declaration, which is useful in establishing the parties' rights; indeed, it is because the appraisal is valid and binding that Liberty Mutual is entitled to summary judgment on Musto's claims for breach of contract and unfair claims settlement practices.   Accordingly, I recommend that the court declare – with a little more specificity than Liberty Mutual had proposed – that:

> The appraisal award signed by Reynolds and Wharff is valid and conclusively set the amount of Musto's loss stemming from the malfunctioning wood-pellet stove incident on February 20, 2019.

*See Logical Operations, Inc. v. CompTIA, Inc.*, No. 6:20-CV-06238 EAW, 2021 WL 1099619, at *3 (W.D.N.Y. Mar. 23, 2021) (noting that "it is entirely within" the court's discretion "to

determine the scope and wording of a declaratory judgment" (citation and internal quotation marks omitted)).

I am not convinced, however, that it is necessary or appropriate for the court to enter the sweeping second and third declarations that Liberty Mutual requests, to the effect that it has completely fulfilled its duties and is not obligated to make any further payment to Musto under the terms of the policy. *See* Defendant['s Answer & Counterclaim] at 14. As an initial matter, although there is no dispute that Liberty Mutual tendered the amount of the appraisal award to Musto, the award accounted for depreciation, and the policy provides that an insured may be entitled to recover depreciation in certain circumstances. *See* Exh. 2, attached to Stipulated Record, at 18. Liberty Mutual states that Musto has not made a claim for this so-called "recoverable depreciation" but does not cite any evidence showing as much or assert that Musto is barred from making such a claim in the future. *See* Defendant's MSJ at 8; *Askew v. Hargrave*, 401 U.S. 476, 478-79 (1971) (cautioning against granting a request for declaratory judgment based on a sparse and inadequate record).

More importantly, having resolved Musto's instant claims on the basis that the appraisal award is valid and binding, a further declaration is not needed to clarify the parties' rights and responsibilities and therefore would serve no useful purpose. *See, e.g., Mendota Ins. Co. v. Hurst*, 965 F. Supp. 1282, 1290 (W.D. Mo. 1997) (declining, in the summary judgment context, "to make a broad sweeping declaration as to a complete lack of any further liability" on the part of an insurer when the court had already addressed the pleaded issues). Given these circumstances, I recommend that the court exercise its discretion and decline Liberty Mutual's request to declare it free of *any* further obligation under the policy. *Harvey v. Machigonne Benefits Adm'rs*, 128 F. Supp. 2d 51, 55 (D. Me. 2001) (declining, in the context of cross-motions for summary

judgment, a defendant's request to enter a declaratory judgment that would serve no useful purpose).  That, in turn, would entitle Musto to summary judgment as to the second and third requested declarations in Liberty Mutual's counterclaim.  *See id.*

### D.  Count III: Common Law Attorney Fees

Finally, Musto asserts a common law claim for attorney fees pursuant to *Foremost Ins. Co. v. Levesque*, 2007 ME 96, 926 A.2d 1185.  *See* Complaint at 5-6; Plaintiff's MSJ at 14-15. In *Foremost*, the Law Court created a common law exception to the American Rule that litigants pay their own attorney fees and held that "an insurer is liable for the insured's attorney fees when the insured" successfully defends "against the insurer's suit seeking a declaration that there is no duty to indemnify."  *Foremost Ins. Co.*, 2007 ME 96, ¶¶ 8, 17, 926 A.2d 1185.  The Law Court explained that "policy reasons" supported such an exception because "[u]nsuccessful litigation filed by an insurer against its insured subjects the insured to significant costs that may render victory for the insured on the indemnification issue meaningless."  *Id.* ¶ 17.

Musto contends that the Law Court's rationale in *Foremost* "applies to *all* coverage litigation and to *all* civil litigation between an insurer and an insured" when "the insured is forced to litigate with the" insurer "to enforce the insurer's obligation under the policy and secure the benefits of the policy."  Plaintiff's MSJ at 14 (emphasis added).  However, this court has already rejected the notion that *Foremost* has such broad applicability.  *See Pinkham v. Liberty Ins. Corp.*, Civil No. 1:18-CV-222-DBH, 2018 WL 3651578, at *1-2 (D. Me. Aug. 1, 2018) ("[T]he lawsuit here is *not* a declaratory judgment action brought by an insurer.  That is critical, because <u>Foremost</u> only allows for attorney's fees in such actions. . . .  [S]ome of the <u>Foremost</u> reasoning might support an extension of the . . . rule to coverage claims brought by plaintiffs. . . .  But the Law Court has

not yet said so, and federal court is not the place to make new state law." (alteration, citation, and internal quotation marks omitted)).

Citing *Pinkham* in its earlier order denying Liberty Mutual's motion for judgment on the pleadings, the court in this case agreed that Musto would not be entitled to an award of attorney fees under *Foremost* if she prevailed on her claims.  *See* Order on Motion for Judgment on the Pleadings (ECF No. 29) at 9-10 & n.9.  The court reserved ruling, however, on the issue of whether Musto might be entitled to such an award if she prevailed on Liberty Mutual's counterclaim for a declaratory judgment, an issue not presented in *Pinkham*.  *See id.* at 9.

Assuming the court accepts my recommendation to grant summary judgment to Musto on the second and third requested declarations in Liberty Mutual's counterclaim, Musto has – at least in a technical sense – prevailed on those portions of the counterclaim.  Nevertheless, even if this court were in a position to make new state law, the rationale of *Foremost* does not support awarding Musto her attorney fees in the circumstances of this case.   Indeed, Musto can hardly be described as having been forced to litigate Liberty Mutual's request for a declaratory judgment when the request was made as a counterclaim in the suit Musto initiated.  More importantly, Musto has not succeeded in showing that Liberty Mutual has failed to meet its obligations to her under the terms of the policy.  An award of attorney fees, thus, is not necessary to – as she claims – put her "in the equivalent position" she would have been in if Liberty Mutual had "fully performed its obligations[.]"  Plaintiff's MSJ at 15.

As such, Liberty Mutual is entitled to summary judgment on Musto's claim for common law attorney fees.

## IV.  Conclusion

For the foregoing reasons, I recommend that the court **GRANT** in part and **DENY** in part each party's motion for summary judgment as follows: (1) **GRANT** summary judgment to Liberty

Mutual, and **DENY** summary judgment to Musto, on Musto's claims for breach of contract (Count I), unfair claims settlement practices (Count II), and common law attorney fees (Count III); (2) **GRANT** summary judgment to Liberty Mutual, and **DENY** summary judgment to Musto, as to the first requested declaration in Liberty Mutual's counterclaim and **DECLARE** that the appraisal award signed by Reynolds and Wharff is valid and conclusively set the amount of Musto's loss stemming from the malfunctioning wood-pellet stove incident on February 20, 2019; and **GRANT** summary judgment to Musto, and **DENY** summary judgment to Liberty Mutual, as to the second and third requested declarations in Liberty Mutual's counterclaim.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 21st day of November, 2021.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge